**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

(To be supplied by the court)

Tiffany Grays, pro se
_____, Plaintiff

v.

Lead CSO Garcia
_____,

CSO Lee
_____,

United Stated Marshals Service
_____,

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

**VERIFIED COMPLAINT**

---

| **NOTICE** |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |
| **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Tiffany Grays   |   PO Box 472322 Aurora, CO 80047

(Name and complete mailing address)

303-993-0792   |   Legalgrays@gmail.com

(Telephone number and e-mail address)

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Lead CSO Garcia   |   901 19th St. 3rd Fl. Denver, CO 80294-2501

(Name and complete mailing address)

(303) 728-7800

(Telephone number and e-mail address if known)

Defendant 2:    CSO Lee   |   901 19th St. 3rd Fl. Denver, CO 80294-2501

(Name and complete mailing address)

(303) 728-7800

(Telephone number and e-mail address if known)

Defendant 3:    United Stated Marshals Service | L. Dickinson Office of General Counsel

(Name and complete mailing address)    U.S. Marshals Service
Washington D.C. 20530-0001

703-740-3943

(Telephone number and e-mail address if known)

Defendant 4:    _____

(Name and complete mailing address)

_____

(Telephone number and e-mail address if known)

## C.    JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

☑    Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the First, Fifth, and
_____

Fourteenth Amendments to the Constitution of the United States
_____

☐    Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of _____.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of _____ (name of state or foreign nation).

Defendant 1 has its principal place of business in _____ (name of state or foreign nation).

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3

**D.     STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:   Violations of 42 U.S.C. § 1981(a) - Race Discrimination - All Defendants

Supporting facts: 26. Plaintiff re-alleges the preceding paragraphs set forth above and

27.     42 U.S.C. § 1981(a) guarantees equal rights under the law to all persons within the jurisdiction of the United States with "the full and equal benefit of all laws and proceedings for the security of persons." See 42 U.S.C. § 1981(a). In Hampton v. Dillard Dept. Stores, Inc. , 247 F.3d 1091, 1102 (10th Cir.2001), the Tenth Circuit set forth the elements of a § 1981 claim as follows: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981."

28.     Plaintiff a Black woman is a member of protected classes and as a resident of Colorado, USA, Plaintiff is entitled to "the full and equal benefit of all laws and proceedings for the security of persons." Id. § 1981(a).

29.     Any reasonable U.S. Marshal knew or should have known of these rights.

30.     Garcia and Lee have every day since October 27, 2021 denied Plaintiff of all laws for the security of [her] person and property while on District of Colorado public property through the defamatory "belligerent" statements by Garcia and Judge Crews, unlawful detention at security desks to be forced to listen to unnecessary explanations about unnecessary alleged courtesy questions from marshals Garcia and Lee, unlawful requirements to exercise plaintiff's right to petition the government for redress by her relinquishment of her freedom of speech. Said violations deprived Plaintiff of laws, the First, Fifth, and Fourteenth Amendments of the U.S. Constitution without just cause due to Plaintiff's race. Garcia and Lee's motivation is race based as, similarly situated court attendees who came after plaintiff that day, who were white were not forced to answer the question of which courtroom in order to gain access to the courtroom, nor forced to listen to unnecessary explanations through unlawful detainment at the security desk.

S(ee Additional Pages)

CLAIM TWO: __Violations of 42 U.S.C. § 1985  - Garcia, Lee, USMS__

Supporting facts: 39. Plaintiff re-alleges the preceding paragraphs set forth above and

40.    To state a claim under 42 U.S.C. § 1985(3), a plaintiff must show the following: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of laws, or of equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a Plaintiff of the United States. Griffin v. Breckenridge , 403 U.S. 88, 91, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

41.    At all relevant times Garcia and Lee joined an ongoing Civil Rights Conspiracy while they were acting under the color of law when depriving Plaintiff of her rights as employees, agents, and/or officers for the United States Marshals Service.

42.    The First, Fifth, and Fourteenth Amendments of U.S. Constitution affirm Plaintiff's right to be upon the premises Bryon G. Rogers Courthouse, as it is a public building where the public can petition the government for redress. As Plaintiff provided ID, gave her belongings and person for scanning, and stated her business of being there for court, Plaintiff substantially and materially complied with Rule 83.2. This fact substantiated as the charge "belligerent" only came when plaintiff refused to answer Lee's courtesy question and refused to be unlawfully detained by Garcia who wished to make Plaintiff listen to his unnecessary explanation about the unnecessary alleged courtesy question posed by Lee to Plaintiff; making the instruction to not enter or to leave by or based upon said alleged courtesy questions and unlawful detainment by Garcia, an abuse of discretion and authority; further substantiating the discriminatory retaliatory conduct of Garcia and Lee against Plaintiff.

43.    On October 27, 2021, Garcia and Lee decline Plaintiff's rights as Plaintiff expressly asked to go to court, which Garcia and Lee denied under the false justification that Plaintiff was "belligerent," which was due Plaintiff's race, color, sex, and/or in retaliation for her active exercising her rights, in violation of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution and the Colorado Constitution.

44.         On October 27, 2021, Garcia and Lee conspire to deprive plaintiff her rights to due process, equal protection, and free speech as the video shows plaintiff never answered the question of which courtroom and neither Lee nor Garcia reviewed plaintiff's ID, so they would have no knowledge of plaintiff's name to confirm the courtroom even if answered. This is further supported as in lieu of permitted plaintiff to proceed to due process Garcia restrained plaintiff and wanted to make her listen to his unnecessary explanation about an unnecessary alleged courtesy question whose answer posed as a barrier to due process.

(See Additional Pages)

## E.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

WHEREFORE, Plaintiff prays for justice to correct previous and future deprivation of Plaintiff's rights through judgment in her favor, against Defendants, and grant:

A.    Injunctive Relief:

a.    Correction and order the restoration of Plaintiff's reputation through the suppression of the defamatory statements made in Judge Crews' court by Garcia;

b.    U.S. Marshals and court staff be prohibited from requiring any member of the public, including Plaintiff, from being forced to answer alleged courtesy to access the courtroom;

c.    Rule 83.2 is amended to safeguard the constitutional rights of the people U.S. Marshals and court staff determine warrant ad hoc investigations pursuant to Rule 83.2;

(See Additional Pages)


## F.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)


October 30, 2023
_____
(Date)


(Revised December 2017)

6

## D. STATEMENT OF CLAIMS

# **Introduction**

**COMES NOW** Plaintiff Tiffany Grays, ("Ms. Grays or plaintiff"), appearing pro se makes the following Complaint under 42 USC §1983 for the violation of the plaintiff's civil rights to Due Process and Equal Protection Under the Law secured by the United States Constitution or by Federal law and guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States as Defendants have deprived the plaintiff of property and due course of justice in violation of 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1985 (3) and 42 U.S.C. sec. 1983 through the willfully failed duties refrain from obstructing justice as officers of the Court Security Officers ("CSO"): Lead CSO Garcia ("Garcia") and CSO Lee ("Lee"), who work for Defendant the United States Department of Justice United States Marshals Service, ("USMS"), all collectively ("Defendants"), at District of Colorado Courts. Garcia and Lee sought to force the plaintiff to forgo her right to due process and justice in by construing on October 27, 2021 that D.C.COLO.LCivR 83.2 ("Rule 83.2") meant plaintiff needed to tell marshals Garcia and/or Lee which courtroom she was going to in order to proceed to the courtroom she had processed her court documents and laptop and purse and presented valid identification – even though neither Lee nor Garcia reviewed plaintiff's ID - and stated her business as being present and being appropriately dressed for court; full compliance with the plain language of Rule 83.2. When plaintiff sought the assistance of another marshal, the lead marshal, it was affirmed as a priority that the question posed was "out of courtesy" for the plaintiff. An admission of the deprivation of plaintiff's right to due process and her First Amendment rights to refrain from answering unnecessary courtesy questions in order to access the due process guaranteed to

1

plaintiff is nothing short of an abomination that must be quashed expediently. After the deprivation of plaintiff's rights predicated upon an alleged "courtesy" which was not deemed courteous to plaintiff, Garcia went to the exact courtroom plaintiff refused to state – making the question alleged to be a "courtesy" unnecessary at minimum and a clear abuse of authority to require answers to questions which are already known to the marshals under the guise of permission under Rule 83.2 - she was going to and lied and told the judge on the record that plaintiff had been "belligerent." Without giving plaintiff the opportunity to be heard or provide proof, without seeking any additional proof himself, Honorable District of Colorado Magistrate Judge S. Kato Crews made two orders on public record which defamed plaintiff and stated as fact, that plaintiff was "belligerent."

Thus, Defendants have violated the Equal Protection clause of the 14th Amendment to the U.S. Constitution because Defendants did not protect Plaintiff as other similarly situated Plaintiffs and community members not on government payroll working in the building or being an attorney, but an unlicensed member of the public exercising her rights to due process for herself. Defendants have violated the First Amendment as Plaintiff's expression, assembly, and the right to petition the government through the District of Colorado case was denied on October 27, 2021. Said deprivations were conducted under Local Rule 83.2 which violates (i) the Substantive Due Process clause of the Fourteenth Amendment, in that in it's current interpretation by marshals and Judge Crews Rule 83.2 allows alleged "courtesy" questions to be sufficient to deny a Plaintiff entry, a city who is known to the marshals, therefore Rule 83.2 is vague and overbroad as it permits any person for any marshal, or court staff any reason to deny any person the rights to equal enjoyment of petitioning the government for redress upon public property; (ii) violates Ms. Grays' free speech rights in

2

various ways in violation of the First Amendment; (iii) Rule 83.2 constitutes a substantial burden on Ms. Grays' free exercise of liberties and religion as she is free to speak and be upon court property to attend court hearings let alone court hearings where she is a plaintiff in the name of Jesus Christ, as guaranteed by the First Amendment, and does not survive strict scrutiny; resulting in the conduct of Defendants violating the Accommodation Clause all due to Plaintiff's race, sex and/or in retaliation for Plaintiff's engagement in protected activities of refusing to relinquish her First Amendment Freedom of Speech rights while exercising her right to due process. Said actions have been materially detrimental to the plaintiff and requires justice through restoration of plaintiff's reputation through correction of the record, declaring the parameters of questions posed under Rule 83.2 damages, costs, and expenses as alleged herein. Pursuant to Fed. R. Civ. P. 8 and 9, Plaintiff files this detailed Verified Complaint.

## Certification

1.    Plaintiff pursuant to 28 U.S.C. § 2675(a) served the Notice of Claims via online form, claim #53329 on April 01, 2022. **(Appendix 1).** Plaintiff did not receive a denial of claims.

## Jurisdiction & Venue

2.    This action arises under Section 1 of the Civil Rights Act of 1871, 17 Stat. 13, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the First, Fifth, and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Declaratory Judgment is appropriate through 28 U.S. Code § 2201(a).

4.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). The

Defendants work for or are a governmental entity, within the District of Colorado, and all

relevant events occurred and will occur in the District of Colorado.

## Parties

5.      Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them

herein by reference.

6.      *Pro se* Plaintiff Tiffany Grays, an African American female, native of Aurora,

Colorado, a person considered to be a U.S. Plaintiff as defined in the U.S. Constitution,

who also has attended many courts and is very familiar with entry procedure for multiple

Colorado courts.

7.      Defendant CSO Lead Garcia, an middle-aged Hispanic male working at the

security gate on October 27, 2021, at the Bryon G. Rogers Courthouse in Denver,

Colorado, through conspiracy and/or in deprivation of Plaintiff's rights afforded under

the U.S. Constitution, is being named in his personal and official capacity.

8.      Defendant CSO Lee, an elderly Black male working at the security gate on

October 27, 2021, at the Bryon G. Rogers Courthouse in Denver, Colorado, through

conspiracy and/or in deprivation of Plaintiff's rights afforded under the U.S. Constitution,

is being named in his personal and official capacity.

9.      Defendant U.S. Marshals Service is the employer for Garcia and Lee, is

responsible for the training of its marshals, receives Federal funds and is a governmental

entity of the United States of America headquartered Viginia, USA.

4

# Facts

10.     Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them herein by reference.

11.     As a Plaintiff of the United States of America, Plaintiff is entitled to equal rights and protections afforded through the U.S. Constitution.

12.     On and since October 27, 2021, Defendants Garcia and Lee through Defendant USMS cancelled Plaintiff's entitlement to equal rights and protections afforded through the U.S. Constitution without just cause and through defamatory statements that plaintiff was "belligerent."

13.     Defendants Garcia and Lee had notice that it is clearly established under law that the deprivation of Plaintiff's rights afforded under the U.S. Constitution is a violation of 42 USC §1983 and it is settled case law that the plaintiff has standing resulting from this violation and no duty to give additional notice or exhaust any administrative remedies.

14.     Despite this notice, Defendants Garcia and Lee through the USMS continued this misconduct in violation of the Plaintiff's rights to Due Process and Equal Protection Under the Law secured by the United States Constitution or by Federal law and guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, continued depriving the Plaintiff of property and due course of justice in violation of 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1985 (3) and 42 U.S.C. sec. 1983.

15.     Garcia and Lee continued the unlawful termination of Plaintiff's freedom to go and enjoy the benefits and services of public court property in retaliation for the Plaintiff's earlier notice that Garcia and Lee were violating the Plaintiff's rights to not be forced to answer alleged courtesy questions through being treated unfairly due to her race, sex,

color and/or status as an unlicensed Plaintiff exercising her right to remain silent and not be unlawfully detained.

16. The USMS ignored the noticed misconduct and the resulting financial liability as no response or denial was received about plaintiff's claims against Garcia and Lee.

17. This misconduct through unlawful detainment, defamation, time, energy, travel to and from court, and extreme emotional distress caused and/or contributed to Plaintiff's depression, anxiety, fear, all of which results in Plaintiff repeatedly being kept from earning salary, wage and independent contractor income, enjoying life, being free. Defendants' conduct caused and contributed to damaged relationships and reputational harm.

18. As is the case here, Plaintiff claims a right to the courthouse as public property to petition the government for redress and maintain her freedom of speech. In *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3rd Cir. 1977), the court stated that "abuse of process is by definition a denial of procedural due process." Under the circumstances of this case, the above quote is particularly relevant. Plaintiff has a right to equal enjoyment as all other Plaintiffs, which would include access to enjoy Plaintiff's rights to petition the government for redress without forgoing her right to retain freedom of speech and to not be unlawfully detained. It is an abuse of process when a legal procedure is perverted to accomplish an ulterior purpose for which it was not designed. See Prosser, Law of Torts (4th Ed.), page 856 (1971). See also, *Tappen v. Ager*, 599 F.2d 376 (10th Cir. 1979).

19. The fact is that as an African-American, Plaintiff is much more likely to be wrongly convicted of a crime. As many as 100 million U.S. adults – or nearly one-third of the

population – have a criminal record of some sort[3]. Minorities like the Plaintiff are

disproportionately charged and convicted of crimes in the United States[4].

---

[3] Bureau of Justice Statistics, U.S. Dep't of Justice, Survey of State Criminal History Information Systems, 2012, 3 (Jan. 2014), available at https://www.ncjrs.gov/pdffiles1/bjs/grants/244563.pdf.

[4] https://www.sentencingproject.org/publications/un-report-on-racial-disparities/

## Claims for Relief

20.     Plaintiff re-alleges the preceding paragraphs set forth above and incorporate them

herein by reference.

21.      At all relevant times Garcia and Lee were acting under the color of law when

depriving Plaintiff of her rights.

22.      Plaintiff makes the following averments in support of allegations the defendants

violated 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and 42 U.S.C. §

2000a: the Civil Rights Act "is to be afforded a liberal construction in order to carry out

the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of

racial discrimination." *United States v. Beach Assocs., Inc.* , 286 F.Supp. 801, 808–09

(D.Md.1968). *See also Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175

F.Supp.3d 1290 (D. Colo. 2016).

23.      Defendants Garcia and Lee utilizing their badges of justice to excessively force

plaintiff out of the courthouse, to unlawfully detain plaintiff at the court security desk,

preventing her advancement to the courtroom, upon the Black female Plaintiff created a

dangerous condition in the public facility used official business, waiving immunity.

7

24. "[A]n officer may not base his probable-cause determination on speech protected by the First Amendment." See *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006). Where plaintiff's speech did not constitute fighting words and was thereby protected speech, it could not serve as basis for violation ordinances at issue. *Sandul v. Larion*, 119 F.3d 1250, 1255-56 (6th Cir. 1997).

25. This case has been seen as matter of public importance. See Exhibit 3 pp.1-4.
https://www.coloradopolitics.com/courts/judge-agrees-security-guards-could-block-woman-from-entering-courthouse-for-failing-to-answer-question/article_8567b01e-c586-11ec-be08-8b9e19ffd9cc.html

## COUNT 1
### Violations of 42 U.S.C. § 1981(a)
### Race Discrimination
### Garcia, Lee, and USMS

26. Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

27. 42 U.S.C. § 1981(a) guarantees equal rights under the law to all persons within the jurisdiction of the United States with "the full and equal benefit of all laws and proceedings for the security of persons." *See 42 U.S.C. § 1981(a)*. In *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir.2001), the Tenth Circuit set forth the elements of a § 1981 claim as follows: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981."

28. Plaintiff a Black woman is a member of protected classes and as a resident of Colorado, USA, Plaintiff is entitled to "the full and equal benefit of all laws and proceedings for the security of persons." *Id.* § 1981(a).

29. Any reasonable U.S. Marshal knew or should have known of these rights.

8

30. Garcia and Lee have every day since October 27, 2021 denied Plaintiff of all laws for the security of [her] person and property while on District of Colorado public property through the defamatory "belligerent" statements by Garcia and Judge Crews, unlawful detention at security desks to be forced to listen to unnecessary explanations about unnecessary alleged courtesy questions from marshals Garcia and Lee, unlawful requirements to exercise plaintiff's right to petition the government for redress by her relinquishment of her freedom of speech. Said violations deprived Plaintiff of laws, the First, Fifth, and Fourteenth Amendments of the U.S. Constitution without just cause due to Plaintiff's race. Garcia and Lee's motivation is race based as, similarly situated court attendees who came after plaintiff that day, who were white were not forced to answer the question of which courtroom in order to gain access to the courtroom, nor forced to listen to unnecessary explanations through unlawful detainment at the security desk.

31. By virtue of his own conduct and state of mind, Garcia deprived the Plaintiff's civil rights in collusion with Judge Crews in by speaking and determining without offer of proof and making statements on the record that Plaintiff was "belligerent" knowing plaintiff would be denied the aforementioned rights through Rule 83.2, on the basis of Plaintiff's race, color, sex, and/or in retaliation for her active exercise of her freedom of speech, due process, and free exercise of her religious freedoms.

32. Garcia and Lee's conduct impeded upon Plaintiff's Fourteenth Amendment Rights to equal protections of laws, but also her First Amendment Rights, as the public entity USMS allows its employees to discriminately prohibit constitutionality protected conduct while on public court property. See *Zwickler v. Koota*, 389 U.S. 241, 249-250 (1967), and cases cited. Wherever the title of streets and parks may rest, they have immemorially

been held in trust for the use of the public.' *Haguse v. CIO* 307U.S. 496, 515 (1939)."
*Kunz v. New York*, 340 U.S. 290, 293 (1951). See also *Shuttlesworth v. Birmingham*, 394
U.S. 147, 152 (1969). The right to use a public place for expressive activity may be
restricted only for weighty reasons.

33. Plaintiff was entitled to access the courtroom as she had materially complied with Rule
83.2 and as a U.S. citizen to access the public court forum.

34. Defendants intentionally interfered with Plaintiff's right to enjoy the benefits and
compliance with Rule 83.2, the privileges of that compliance, and the benefits of
accessing public court property.

35. Based on the forgoing Defendants have deprived Plaintiff of the full and equal benefit of
her free speech, free religious exercise, right to petition the government, at the Bryon G.
Rogers courthouse on and after October 27, 2021 due to her race in violation of 42 U.S.C.
§ 1981(a).

36. Said impairments were conducted by actors CSOs Garcia and Lee who are employed by
the USMS, who were securing the courthouse and therefore operating under color of
State law in violation of 42 U.S.C. § 1981(c).

37. As a result of the unlawful conduct Plaintiff has suffered *inter alia*, loss of income,
emotional distress, loss of housing, physical injuries, mental anguish including
humiliation and fear.

38. **WHEREFORE,** Plaintiff demands judgment for the unlawful termination of freedom
and retaliation for 42 U.S.C. § 1981 Protected Advocacy against all the Defendants
jointly and severally, for actual, general, special, compensatory damages in the amount of
$2,000,000 and further demands judgment against each of said Defendants, jointly and

severally, for punitive damages in the amount of $2,000,000; plus the costs of this action, including attorney's fees should the plaintiff obtain an attorney; injunctive relief in ordering US. Marshals in District of Colorado Courts including but not limited to Garcia and Lee cannot prohibit plaintiff's attendance in court based on alleged courtesy questions, courtesy questions, unnecessary to the safety and security of court staff and proceeding questions; and such other relief deemed to be just and equitable in favor of the plaintiff.

## COUNT 2

### Violations of 42 U.S.C. § 1985
### Garcia, Lee, USMS

39. Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

40. To state a claim under 42 U.S.C. § 1985(3), a plaintiff must show the following: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of laws, or of equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a Plaintiff of the United States. *Griffin v. Breckenridge* , 403 U.S. 88, 91, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

41. At all relevant times Garcia and Lee joined an ongoing Civil Rights Conspiracy while they were acting under the color of law when depriving Plaintiff of her rights as employees, agents, and/or officers for the United States Marshals Service.

11

42. The First, Fifth, and Fourteenth Amendments of U.S. Constitution affirm Plaintiff's right to be upon the premises Bryon G. Rogers Courthouse, as it is a public building where the public can petition the government for redress. As Plaintiff provided ID, gave her belongings and person for scanning, and stated her business of being there for court, Plaintiff substantially and materially complied with Rule 83.2. This fact substantiated as the charge "belligerent" only came when plaintiff refused to answer Lee's courtesy question and refused to be unlawfully detained by Garcia who wished to make Plaintiff listen to his unnecessary explanation about the unnecessary alleged courtesy question posed by Lee to Plaintiff; making the instruction to not enter or to leave by or based upon said alleged courtesy questions and unlawful detainment by Garcia, an abuse of discretion and authority; further substantiating the discriminatory retaliatory conduct of Garcia and Lee against Plaintiff.

43. On October 27, 2021, Garcia and Lee decline Plaintiff's rights as Plaintiff expressly asked to go to court, which Garcia and Lee denied under the false justification that Plaintiff was "belligerent," which was due Plaintiff's race, color, sex, and/or in retaliation for her active exercising her rights, in violation of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution and the Colorado Constitution.

44. On October 27, 2021, Garcia and Lee conspire to deprive plaintiff her rights to due process, equal protection, and free speech as the video shows plaintiff never answered the question of which courtroom and neither Lee nor Garcia reviewed plaintiff's ID, so they would have no knowledge of plaintiff's name to confirm the courtroom even if answered. This is further supported as in lieu of permitted plaintiff to proceed to due process Garcia restrained plaintiff and wanted to make her listen to his

12

unnecessary explanation about an unnecessary alleged courtesy question whose answer posed as a barrier to due process.

45. Garcia conspired with Judge Crews on October 27, 2021, when Garcia proceeds to the courtroom and alleges on court record that Plaintiff was "belligerent" yet the recording from Plaintiff shows that is completely inaccurate. Plaintiff did not cuss, she did not yell, she did not threaten person or property, she complied with all other parameters to gain entry to the courtrooms. There was no investigation by Judge Crews, only a statement by Garcia on record, no second thought to ensure Plaintiff's rights were being rightfully deprived. Neither Garcia, Judge Crews, or Lee have addressed their role as officers of the court who are responsible to ensure the speedy dispensing of equal justice; an overt failure to serve and protect the Black Plaintiff.

46. Video of the lobby shows Garcia and Lee letting other white persons pass through security without asking which courtroom they were going to, indicating marshals reserve the alleged "courtesy" for those who they deem based on looks, or name, should have to answer alleged courtesy questions.

47. Garcia and Lee's conduct deprived Plaintiff's constitutional right to equally exercise her liberties to address petition the government for redress, due process, freedom of speech, as well as to be free from racial discrimination, a right that is protected by 42 U.S.C. § 1985(3). *See Griffin*, 403 U.S. at 97, 91 S.Ct. 1790.

48. Garcia and Lee did the above described violations of 42 U.S.C. § 1983 in furtherance of objectives to prevent due process for poor individuals and to quell those poor Black female individuals like plaintiff that would threaten exposure of misconduct and unlawful actions of U.S. Marshals in the District of Colorado courthouses.

13

49. Judge Crews, Garcia, and Lee joined an ongoing Civil Rights Conspiracy and committed affirmative acts in furtherance of the conspiracy designed to discredit the plaintiff.

50. The conduct described in the proceeding paragraphs describe retaliatory discrimination, denial of Equal Protection Under the Law, Free Speech, Free Exercise of Religion, by Garcia and Lee as plaintiff is a poor Black woman who is free in the name of Jesus Christ as all are men.

51. By and through the foregoing, US Marshals Garcia and Lee knowingly joined an ongoing Civil Rights conspiracy motivated by and with the objective of "racial or otherwise class-based invidious discriminatory animus".

52. Plaintiff was injured through the denial of her legitimate expectations of public property, income, loss in reputation, embarrassment, and loss opportunity. As a result of the unlawful conduct of Garcia and Lee, Plaintiff has suffered *inter alia*, loss of income, emotional distress, loss of housing, physical injuries, mental anguish including humiliation and fear.

53. **WHEREFORE,** Plaintiff demands judgment for the unlawful termination of freedom and retaliation for 42 U.S.C. § 1985(3) Protected Advocacy against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $2,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $2,000,000; plus the costs of this action, including attorney's fees should the plaintiff obtain an attorney; injunctive relief in ordering US. Marshals in District of Colorado Courts including but not limited to Garcia and Lee cannot prohibit plaintiff's attendance in court based on alleged courtesy questions, courtesy questions, unnecessary to the safety and security of court staff and

proceeding questions; and such other relief deemed to be just and equitable in favor of the plaintiff.

## COUNT 3

**Violations of 42 U.S.C. § 2000a**

**Fourth Amendment – Unlawful Detainer**
**Fourth Amendment – Excessive Force**
**Fifth Amendment – Deprivation of Due Process**
**Fourteenth Amendment – Deprivation of Due Process and Equal Protection – Race, Religion, Color, and/or Retaliation**
**Garcia, Lee, and USMS**

54. Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

55. 42 U.S.C. § 2000a protects an individual's "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation ... without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

56. Federal courthouse property are a place of public accommodation as defined in 42 U.S.C. § 2000a(b)(3).

57. The court proceedings occurring in Federal courthouses occur using technology and tools manufactured outside the State of Colorado, concerning business and parties outside of Colorado, therefore the operations affect interstate commerce.

58. The activities occurring in Federal courthouses could conclude the property in question as a place of entertainment as the hearings held here can cause "someone's time to pass agreeably." *Daniel v. Paul*, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969).

15

59. District of Colorado courts are a place of public accommodation within the meaning of the First, Fourth, and Fourteenth Amendment. Plaintiff was denied equal enjoyment of the goods, services, facilities, privileges, advantages of petitioning the government for redress on October 27, 2021, per Garcia and Lee.

60. The temporal proximity of Plaintiff's charges of deprivation of due process and freedom of speech while at the security desk on October 27, 2021, substantiates the retaliatory nature of the arbitrary and capricious unlawful detainer of plaintiff by Garcia, the excessive force by Garcia and Lee in by removing Plaintiff from the public Federal courthouse property. The timeline of events are as follows:

  a. Garcia and Lee at Bryon G. Rogers courthouse for failing to adhere to the local rules thereby failing to afford Plaintiff equal protections and due process under the Fifth and Fourteenth Amendments of the U.S. Constitution; and defaming Plaintiff's character and conduct on the record in District of Colorado case 20-CV-00452-WJM-SKC on October 27, 2021.

  b. On October 27, 2021, Plaintiff arrived for the ordered hearing in the aforementioned case, but upon arrival Plaintiff was denied equal access and liberties at the District of Colorado Bryon G Rodgers courthouse because after presenting her ID and affirming Plaintiff was there for court, and scanning herseld and items for weapons, Court Security Officer (CSO) Lee required Plaintiff to answer his additional question of which courtroom Plaintiff was going to. Plaintiff having been involved in many cases has direct knowledge of the process and procedures when entering the courthouse and has never encountered the conduct

exhibited by security personnel at the Bryon G. Rodgers courthouse on October 27, 2021.

c.  Said conduct was alleged by all to be a "courtesy" was not in a helpful nature to the Plaintiff, as the way the inquiry was posed was not helpful, "which courtroom," not what one would expect if the CSO seeking to offer assistance to the Plaintiff through further inquires into the exact courtroom to prevent the Plaintiff from proceeding to the courtrooms only to find out they are in an incorrect courthouse. One would expect a helpful CSO would ask the customary question of, "do you know where you are going," or "can I help you to where you are going." not "which courtroom." Notwithstanding the aforementioned, while there is nothing wrong with further inquiry, further inquiries are not required in the Rule 83.2 to be answered by Plaintiffs who have provided ID and stated the nature of the business was to go to court, and had themselves and their items scanned for weapons.

d.  Upon entering the courthouse Plaintiff had her ID ready and began putting her purse and laptop in bins to be scanned. Plaintiff walked in dressed for court. CSO Lee who later identified himself as Lee was manning the security station, as Plaintiff began to put her belongings into the bin to go through the scanner, Lee asked "what/why are you here?" As Plaintiff was trying to hand him her ID which he refused, Plaintiff replied, "I'm here for court." Lee then asked, "which courtroom?" Plaintiff replied, I don't have to tell you that. Lee stated Plaintiff had to tell him which courtroom. Plaintiff said no I don't. Plaintiff then asked which rule or law requires her to tell him which courtroom in order to access the courts.

17

Lee refused answer or provide the rule or otherwise relevant justification of the further inquiry, and again asked Plaintiff which courtroom. Plaintiff then asked for a supervisor. Lee refused. Plaintiff asked for a supervisor, rule, or law, Lee refused and said he would not allow her to go to court if Plaintiff did not tell him which courtroom. Plaintiff asked for the supervisor again. This time Lee asked another CSO to get the sergeant.

e. Garcia who is the Lead CSO comes down - he was the same CSO from the last time Plaintiff was at this same courthouse and security made her dump everything out of her purse to access court that day because Plaintiff allegedly had too many coins in the bottom of her purse[1]. When Lead CSO Garcia approached Plaintiff, Plaintiff asked Garcia for the rule or law that requires her to say which courtroom Plaintiff is going to in order to gain access? Lead CSO Garcia initially did not respond, Plaintiff asked again to which Lead CSO responded that there was "no rule or law but Lee was asking out of "courtesy[2]."

[1] Plaintiff asked why Plaintiff had to dump her purse if they knew it was coins, Plaintiff was told because it was a lot of coins. Plaintiff had never ever been asked to dump her whole purse. Judge Crews was also made aware of the incident and stated he would follow-up with security.
[2] Exhibit 1 - https://photos.app.goo.gl/NAmNYt7VnsQjsxnZA at 4:11

f. Plaintiff said I don't need to answer questions out of courtesy to access court that is an abuse of authority. After 4 to 5 seconds of silence, (see Exhibit 1), Garcia stated he was not going to talk over Plaintiff, Plaintiff said I don't want to hear anything except the rule or law that requires Plaintiff to say which courtroom I am going to. Garcia said he's not going to talk over Plaintiff and that Plaintiff cannot go to court. Plaintiffs are not required under any rule or law to listen to CSO explanations of alleged courtesy questions in order to access courts under any rule

18

or law. Plaintiff being unwilling to let Lead CSO Garcia explain the alleged courtesy in her attempt to access due process does not result in Plaintiff, "talking over," Garcia. Garcia's unlawful detainment at the security gate to hear his unnecessary alleged courtesy question explanation results in Garcia's deprivation of Plaintiff's right to go to the courtroom to access due process, an overt abuse of discretion and authority and excessive use of force that must be abolished expediently.

g.  As Garcia's attempts to provide the courtesy explanation were righteously denied by Plaintiff, Garcia abuses his power over Plaintiff's rights and belongings by resulting to aggressive actions: 1) picking up the bins which contained Plaintiffs belongings; 2) moving them aggressively toward the Plaintiff's person while standing in close proximity to Plaintiff and stating Plaintiff is not going to court and can leave; and 3) then aggressively dropping the bin on top of the second bin containing Plaintiff's laptop. When Plaintiff repeated the request for the rule or law again, Garcia repeated the aggressive, provoking, escalating actions: 1) picking up the bin and aggressively motioning the bin toward Plaintiff's person; and 2) dropping it hard down on Plaintiff's laptop. Garcia then begins walking away from Plaintiff towards the elevators.

h.  While at the elevators, Garcia responds to Plaintiff asking him to identify himself, which he responds only "Garcia." (*Id.* at 5:30). Plaintiff asked for his first name to which Lead CSO sought to patronize and provoke the Plaintiff further by escalating the issue by stating, "there is no rule or law that requires him to give his first name," (*Id.* at 5:33). Plaintiff said I am going to email the judge.

19

i. While not one of the CSOs had looked at Plaintiff's ID nor as at issue here did Plaintiff disclose which courtroom she was going to, yet about 10 minutes later Garcia came back down to the lobby as Plaintiff was waiting in the lobby of the courthouse to hear from the judge via email and said Garcia had talked to the judge and told him what was happening. Plaintiff then said so you know which courtroom she was going to and you didn't let Plaintiff access court because she didn't answer your courtesy question that you already had the answer to? Which Garcia failed to respond.

j. Garcia went Judge Crews and stated on record Plaintiff was "belligerent," (Exhibit 2), and that was why her access to the courtroom was denied. At no point in time was Plaintiff belligerent. At no point in time did anyone ask Plaintiff to leave the courthouse lobby for said alleged belligerent conduct, yet Garcia told the Judge Plaintiff was belligerent. Judge Crews based on Garcia's known false misrepresentations to the Court issues two orders adopting Garcia's defamatory statements regarding Plaintiff's conduct, as evident in ECF No. 137. Judge Crews put on the record without any fact finding that Plaintiff was "belligerent…and [as a result of Plaintiff having been [sic] belligerent] the Court will issue a separate order that addresses Ms. Grays' conduct." *Id.* Without reviewing video, hearing from others including the Plaintiff, the Court adopts the intentional misstatements of Garcia to obfuscate the egregious denial of Plaintiff's constitutional right to access the courtroom and due process for failing to answer CSO courtesy questions. It is a miscarriage of justice a manifest injustice to deny anybody access to the courtroom based on courtesy questions.

20

k.  In fact, the Court acknowledges the question of which courtroom is one that is
    courteous in nature,

    i.  "The Court was informed by the Lead CSO, who arrived at my Chambers,
        that when Ms. Grays began to proceed through security, a CSO asked her
        where she was going. The Court is informed that CSOs often ask this
        question of those seeking entry into the courthouse in part because
        entrants sometimes confuse this courthouse with the Alfred A. Arraj
        Courthouse across the street, or with the adjacent Federal Building."
        (District of Colorado case 20-CV-00452-WJM-SKC ECF No. 138).

l.  While this may be true, a courteous question is not mandated to be answered

    under any rule or law. To force the Plaintiff to answer allegedly courteous

    questions by CSOs is depriving Plaintiff of her freedom of speech and access to

    due process. Rule 83.2 is plain. ID and nature of business must be stated. Not

    answers to alleged courteous questions. CSOs Lee and Garcia abuse discretion

    and authority by attempting to force Plaintiff to answer courtesy questions, even

    while the CSO Garcia is in possession of information to answer to his own

    courteous question; further indicating the abuse of authority and harassment of the

    Plaintiff. Not one CSO looked at Plaintiff's ID, yet Garcia went to the courtroom

    saying Plaintiff was belligerent. Not one CSO knew which courtroom Plaintiff

    was going to as Plaintiff's refusal to answer the alleged courtesy question of

    which courtroom, yet Garcia went to the exact courtroom Plaintiff was heading to.

    Therefore, Garcia intently deprived Plaintiff access to the courtroom based on his

    abuse of authority in forcing Plaintiff to answer courtesy questions which he held

    the answer and denying her access for her refusal to do so.

m.  The purpose of the security rules are to know who is in the building and prevent

    persons seeking illegitimate purposes from accessing the building, not to force

    Plaintiffs that have been identified through CSO's personal knowledge to answer

alleged courteous questions CSOs already have the answer to. In fact, as Plaintiff was waiting in the lobby, she observed CSO Lee let other white Plaintiffs who he knew through security without requiring ID, asking why they are there, let alone which exact [court]room they were going to; this special treatment seemingly reserved for the Plaintiff or others the CSOs subjectively choose. When Garcia stepped off the elevator after Lee's call for a supervisor, Garcia identified who the Plaintiff was and knew the nature of her business in the building, court; and further knew the exact courtroom Plaintiff was to conduct her business; thus should have let Plaintiff proceed as he would any other person he identified and knew the nature of their business and/or where exactly they were handling said business.

n. In lieu of performing appropriate, fair, de-escalation actions of affording Plaintiff the same privileges other Plaintiffs who CSOs know are able to forgo, the presenting of ID and answering questions related to business in order to access the courts, Garcia seeks to patronize and disparately treat the Plaintiff by coercing her with access to court by unlawfully detaining plaintiff attempting to force Plaintiff to listen to an unnecessary courtesy explanation about an alleged courtesy question. It was in fact Plaintiff's refusal to listen to the courtesy explanation as to why Garcia denied Plaintiff access to court. All examples of the disparate treatment of the Plaintiff by the CSOs for reasons which Plaintiff can collude were due to her race, sex, socioeconomical status, color, and in retaliation for complaining about the CSOs previous abuse of authority and power.

22

o.  The facts and evidence do not reflect Plaintiff was belligerent at any point. In fact, Plaintiff's alleged belligerent conduct was only sufficient to deny Plaintiff the ability to access the courtroom, due process, and exercise her liberties, at no point in time was Plaintiff's presence or conduct in the courthouse lobby sufficient to substantiate Plaintiff's access to the courthouse lobby over the alleged belligerent conduct. Even after telling the Plaintiff she could leave and she was not going to court, Garcia returned to the courtroom lobby to inform Plaintiff Garcia had advised the judge what was going on and did not say Plaintiff had to leave the courthouse lobby for her alleged belligerent conduct. Further substantiation Plaintiff's conduct was not belligerent, but that Garcia abused his power and position and access to the court by diverting attention from his unconstitutional abuse of authority by misrepresenting Plaintiff as belligerent to the court.

p.  In fact, the record reflects Plaintiff fully complied with local rule 83.2 as she presented her ID and stated the nature of her business which was court. The CSOs egregiously attempt to exceed the bounds of the rule to access public spaces and petition for redress by requiring Plaintiff to produce ID, state the nature of her business, and state where her business is in the courthouse. Court is the nature of business, nothing in the rule states that the courtroom must be advertised.

q.  The Judge Crews based on Garcia's egregious misrepresentation to Judge Crews threatens Plaintiff's case as though she was failing to prosecute, when the record reflects that is wholly inaccurate. The Court further threatens Plaintiff with Sanctions and/or contempt without having performed any investigation into the matter or giving Plaintiff the full and fair opportunity to present facts to the

23

contrary in violation of Colo. Code. Jud. Cond. 2.6(A). The record reflects the Court immediately adopted and accepted Garcia's testimony as fact without considering any testimony from the Plaintiff, **(Exhibit 2 pp.1-2),** without reviewing any video without questioning any other parties present. The Court then defames Plaintiff on the record calling her conduct "belligerent." *Id.* p.2. Further evidence of impropriety.

61. Every day since October 27, 2021, Plaintiff has been unlawfully deprived of equal enjoyment and access to all proceedings at the Bryon G. Rogers courthouse as a result of Plaintiff believing that she is free in the name of Jesus Christ and man has not the ability to restrict Plaintiff free exercise claiming her birthright promised as a Child of God. Every day that passes without her freedom restored even as this litigation progresses, Plaintiff is further and further damaged.

62. At the time of the complained-of events, Plaintiff had the clearly established constitutional right to enjoy the equal protection of the laws and to be free from U.S. Marshals discrimination based on her race, color, and/or for retaliation for engagement in protected activities.

63. Any reasonable U.S. Marshal knew or should have known of this clearly established right.

64. Based on the lack of evidence and the failure of Defendant Garcia and Lee to make plaintiff leave the premises, plaintiff's race, color, and engagement in protected activities of accessing due process, exercising her religious and speech freedoms were motivating factors in Garcia and Lee's decision to target Plaintiff.

24

65. Defendants' conduct was undertaken with the purpose of, and had the effect of, depriving plaintiff of the equal protection and benefits of the law, equal privileges and immunities under the law.

66. Defendants' actions were objectively unreasonable in light of the facts and circumstances confronting them.

67. There was no rational basis for Defendants' discriminatory actions, let alone as a purposeful narrow tailored to serve a governmental interest.

68. Defendants are also liable for their failure to intervene to prevent the constitutional violations of which they were aware as Plaintiff verbally notified Garcia and Lee her rights to freedom of speech and to access due process were being unlawfully denied through alleged courtesy question posed to Plaintiff by Garcia and Lee.

69. Defendants' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, motivated by malice or ill-will toward Plaintiff, and/or in reckless disregard of Plaintiff's federally protected rights.

70. As a result of the unlawful conduct Plaintiff has suffered *inter alia*, loss of income, emotional distress, loss of housing, physical injuries, mental anguish including humiliation and fear.

71. **WHEREFORE,** Plaintiff demands judgment for the unlawful termination of freedom and retaliation for 42 U.S.C. § 2000a Protected Advocacy against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $2,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $2,000,000; plus the costs of this action, including attorney's fees should the plaintiff obtain an attorney; injunctive relief in

25

ordering US. Marshals in District of Colorado Courts including but not limited to Garcia and Lee cannot prohibit plaintiff's attendance in court based on alleged courtesy questions, courtesy questions, unnecessary to the safety and security of court staff and proceeding questions; and such other relief deemed to be just and equitable in favor of the plaintiff.

**COUNT 4**
**Violations of 42 U.S.C. § 1983**
**Fourth Amendment – Unlawful Detainer and Excessive Force**
**Fifth Amendment – Right to Remain Silent and Deprivation of Due Process**
**Fourteenth Amendment – Deprivation of Due Process and Equal Protection – Race,**
**Sex, Color, and/or Retaliation**
**Garcia, Lee, and USMS**

72. Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

73. To establish a § 1983 claim, a plaintiff must allege (1) a violation of rights protected by the Constitution or created by federal law, (2) proximately caused (3) by the conduct of a person (4) who acted under color of state law. *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005).

74. Section 1983 imposes liability on state actors who cause any citizen to be subjected to the deprivation of their constitutional rights. 42 U.S.C. § 1983; *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). The requisite causal connection is satisfied if the defendants set in motion a series of events that they knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights. *Martinez*, 697 F.3d at 1255. Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.* (quotation omitted).

26

75. As U.S. Marshals, Garcia and Lee are state actors, acting as affirmed in Exhibit 2, under Rule 83.2.

76. As identified in this Complaint, Garcia and Lee set in motion actions that was shown in the prior interaction with Plaintiff and others known to Garcia and Lee were not implemented, as they are not necessary to access the courtroom, therefore Garcia and Lee knew their conduct might violate Plaintiff's rights to petition the government for redress, freedom of speech, equal protections, and property were denied while Garcia and Lee were acting under color of law, Rule 83.2 during which they were being paid by U.S. government.

77. The requirement that plaintiff was to state the courtroom by Lee and Garcia while acting under color of law was pretext for the mistreatment of Plaintiff due to her race, sex, color, and/or in retaliation for engagement in protected activities.

78. The misrepresentation that plaintiff was "belligerent" of Garcia while acting under color of law was pretext for the mistreatment of Plaintiff due to her race, sex, color, and/or in retaliation for engagement in protected activities.

79. The unlawful detainer by Garcia, the requirement to relinquish freedom of speech by Garcia and Lee, and the excessive force to forcing plaintiff to leave public property by Garcia and Lee, through requiring to deny plaintiff freedom of religious exercise, deprived Plaintiff of the rights, privileges secured by the U. S. Constitution to petition the government for redress, freedom of speech, secure person and property, equal protections, and justice for all.

80. Garcia and Lee's conduct on October 27, 2021, violated the Free Exercise Clause of the First Amendment in that Defendants' conduct pursuant to the Ordinance infringes on the

27

Plaintiff's absolute right to hold any religious belief, that she is free to be upon public property and can speak her truth freely in the name of Jesus Christ which may not be interfered with by the government, especially for alleged courtesy questions.

81. At the time of the complained-of events, Plaintiff had the clearly established constitutional right to enjoy the equal protection of the laws and to be free from U.S. Marshals discrimination based on her race, color, and/or for retaliation for engagement in protected activities.

82. Any reasonable U.S. Marshal knew or should have known of this clearly established right.

83. Based on the lack of evidence and the failure of Defendant Garcia and Lee to make plaintiff leave the premises, plaintiff's race, color, and engagement in protected activities of accessing due process, exercising her religious and speech freedoms were motivating factors in Garcia and Lee's decision to target Plaintiff.

84. Defendants' conduct was undertaken with the purpose of, and had the effect of, depriving plaintiff of the equal protection and benefits of the law, equal privileges and immunities under the law.

85. Defendants' actions were objectively unreasonable in light of the facts and circumstances confronting them.

86. There was no rational basis for Defendants' discriminatory actions, let alone as a purposeful narrow tailored to serve a governmental interest.

87. Defendants are also liable for their failure to intervene to prevent the constitutional violations of which they were aware as Plaintiff verbally notified Garcia and Lee her

rights to freedom of speech and to access due process were being unlawfully denied through alleged courtesy question posed to Plaintiff by Garcia and Lee.

88. Defendants' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, motivated by malice or ill-will toward Plaintiff, and/or in reckless disregard of Plaintiff's federally protected rights.

89. Defendants' use of Rule 83.2 and misrepresentations on public record to Judge Crews, which resulted in the deprivation of Plaintiff's freedom of speech, free exercise of her religion, equal protections, public accommodation, and due process as each Defendant has personal knowledge the Rule 83.2 does not require courtesy answers and each has to the power to equally deploy the usage of the Rule. Neither USMS, Garcia, or Lee took appropriate action to ensure Plaintiff's constitutional rights having direct knowledge of the deprivation.

90. As an U.S. citizen, Colorado native, and long-term taxpayer, Plaintiff has a legitimate claim of entitlement to public property in Colorado.

91. Garcia and Lee are void of a legitimate goal in the alleged courtesy question to bar access to the courtroom.

92. The USMS is liable in that it failed to properly train its employees on Constitutional rights of the public and Rule 83.2 and allowed marshals in District of Colorado courts to create and deploy a policy which permits deliberate indifference that is also silence on causation for courtesy questions, which is being used to deny the public seeking access to courts their freedom of speech, free exercise of her religion, equal protections, public accommodation, and due process, on federal public properties.

29

93. By and through the multiple complaints, Defendants had both actual and constructive notice that its policy under Rule 83.2 was substantially resulting in violations of Plaintiff's constitutional guarantees, and the USMS consciously and/or deliberately disregarded the risk of harm to Plaintiff. Plaintiff has been denied substantive due process in her fundamental rights of freedom of speech, free exercise of her religion, equal protections, and public accommodation, while having to engage with U.S. Marshals at courts in the District of Colorado.

94. As a result of the unlawful conduct Plaintiff has suffered *inter alia*, loss of income, emotional distress, loss of housing, physical injuries, mental anguish including humiliation and fear.

**95. WHEREFORE,** Plaintiff demands judgment for the unlawful termination of freedom and retaliation for 42 U.S.C. § 1983 Protected Advocacy against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $2,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $2,000,000; plus the costs of this action, including attorney's fees should the plaintiff obtain an attorney; injunctive relief in ordering US. Marshals in District of Colorado Courts including but not limited to Garcia and Lee cannot prohibit plaintiff's attendance in court based on alleged courtesy questions, courtesy questions, unnecessary to the safety and security of court staff and proceeding questions; and such other relief deemed to be just and equitable in favor of the plaintiff.

## COUNT 5

30

**Rule 83.2 Violates the U.S. Constitution by Depriving Plaintiff of Procedural Due
Process Making Condemnation Appropriate**

**Garcia, Lee, and USMS**

96. Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

97. Rule 83.2, states,

   a. "(a) Procedures. All persons entering a building where court is being held shall be subject to security procedures. All briefcases, purses, parcels, bags, backpacks, and other items shall be passed through X-ray scanners and shall be subject to search. This rule shall apply at such other places as a judicial officer may direct. Violation of this rule shall be grounds for refusing admission to the building where court is being held and may subject the offender to detention, arrest, and prosecution as provided by law or to a contempt proceeding."

   b. (b) Identification or Information. On request of a United States marshal, court security officer, federal protective service officer, or court official, anyone within or seeking entry to any court building shall produce identification and state the nature of his or her business. Failure to provide identification or information shall be grounds for removal or exclusion from the building."

   http://www.cod.uscourts.gov/Portals/0/Documents/LocalRules/2023_Final_Local_Ru les.pdf

98. Rule 83.2 uses concepts that are so ill-defined as to invite the risk of arbitrary and discriminatory enforcement by USMS and CSOs in violation of the Substantive Due

31

Process Clause. The challenged portions, "[o]n request of ... court official anyone within or seeking entry to any court [shall] state the nature of his or her business. Failure to provide information shall be grounds for removal or exclusion from the building[,]" fails to provide substantiation that the question(s) being posed are of purposeful requirement for the security and safety of the building and people in the building, or the ordinary conduction of judicial business, or that the Rule cannot be discriminately deployed based solely at the subjective discretion of the court officer, not that it must relate to the court personnel's official business, or is based under probable cause information, nor any reporting or documenting of the person(s) being denied public accommodation, and the free exercise of freedom of speech and religion.

99. The court personnel implementing ejection and denial of rights to members of the public to ensure that the public knows which courthouse they are at, the as alleged courtesy only afforded to the plaintiff when both Lee and Garcia knew who plaintiff was – as not one looked at plaintiff's ID – and also knew the answer to their own alleged courtesy question posed to plaintiff as a barrier to access due process, "which courtroom?" (Exhibit 1).

100. Another example would be that had plaintiff said to see was there to see the clerk, would Lee have asked the courteous question of 'to do what?' Is providing the specific action you are taking like the filing of a Complaint with the clerk or courtroom 205 the "nature of his or her business" Rule 83.2 at b? The plain answer is no.

101. The nature of anything is a broad term. Like when reasonable persons referring to the nature outside our homes, that could include nature in a 1 block radius or nature in a 100 mile radius. Nature encompasses *inter alia,* trees, rivers, mountains, dirt, bugs, humans, weather, and air. To say that in by plaintiff saying "court" (Exhibit 1) the broad

32

term of court, was not stating the nature of her presence is contradictory to common sense and supports Defendants Garcia and Lee's pretext and animus against plaintiff.

102.     By and through the forgoing, Rule 83.2 impermissibly denies Plaintiff's free speech on public court property is a cognizable challenge to the Accommodation Clause. Plaintiff's free speech in remaining silent when being coerced to answer unnecessary alleged courtesy questions by court staff, is itself expressive conduct entitled to constitutional protection. As a general rule, the government is prohibited from regulating speech based upon its content or the particular message it conveys. Such content-based restrictions are presumptively unconstitutional, and the government bears the burden of showing that they are narrowly-tailored to serve compelling governmental interests. *National Institute of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361, 2371 (2018); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83 (1992).

103.     Here the government is void of impartial evidence which substantiates any compelling governmental interest to deny the Plaintiff the right to exercise her due process, freedom of speech and religion as all other similarly situated Plaintiffs enjoy. Rule 83.2 "imposes a selective restriction on expressive conduct far 'greater than is essential to the furtherance of [a substantial governmental] interest.'" *Police Dep't of Chicago v. Moseley*, 408 U.S. 92, 102 (1972).

104.     Rule 83.2 is impermissibly vague and should be "condemned" *Grayned v. City of Rockford*, 92 S.Ct. 2294 (1972), as it is a, "broadly worded licensing ordinance which grant[s] such standardless discretion to public officials that they are free to censor ideas and enforce their own person preference." *Id.* "Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply

33

them." *Edwards v. South Carolina*, 372 U.S. 229, 236 (1963). The ordinance is void of any proscribed conduct, which gives both USMS and CSOs too broad discretion in determining the public's investigative participation they must comply with to access due process. *Shuttlesworth v. Birmingham*, 394 U.S. 147(1969); *Staub v. City of Baxley*, 355 U.S. 313 (1958); *Saia v. New York*, 334 U.S. 58 (1948); *Schneider v. State*, 308 U.S. 147, 163-164 (1939); *Lovell v. Griffin*, 303 U.S. 444 (1938); *Hague v. CIO*, 307 U.S. 496 (1939).

105.    The ordinance was specifically enacted in response to and with the purpose of frustrating layman's or unrepresented persons religious free exercise and freedom of speech as any court officer is capable of such oppression and is therefore not neutral. The general applicability of the ordinance is also deniable as the creation and last changes to the ordinance occurred during Jim Crow, at a time when the persons in charge of the Rules were all and/or mostly likely to be Caucasian and the Rule's language is void of any regulatory statements that narrow the use of the Rule 83.2 to avoid discrimination based on race, color, sex, and/or in retaliation for engagement in protected activities.

106.    Indeed, states have a paramount interest in protecting historically-disfavored groups from discrimination in the provision of public services. See e.g. *R.A.V.*, 505 U.S. at 395 (stating that "we do not doubt" that the state interests in "ensur[ing] the basic human rights of members of groups that have historically been subjected to discrimination . . . are compelling"); *Board of Directors of Rotary Intl. v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987) (recognizing compelling state interest in "eliminating discrimination against women").

34

107.    The fact that Rule 83.2 was used to jeopardize the Plaintiff as an African American, simply by just creating an unsafe environment with people who wear badges and act as gatekeeps to justice - when Plaintiff had not only sought to and did comply with every component of Rule 83.2; Plaintiff was denied access to due process for the exercise of her rights in retaliation justifies condemnation, and substantiates the discriminatory conduct of denying Plaintiff equal access and enjoyment for reasons not supported by the evidence.

108.    Rule 83.2 is unconstitutional as it subjectively deprives Plaintiff's rights at the subjective discretion of deployed alleged courtesy questions. As a general rule, the government is prohibited from regulating speech based upon its content or the particular message it conveys. Such content-based restrictions are presumptively unconstitutional, and the government bears the burden of showing that they are narrowly-tailored to serve compelling governmental interests. *National Institute of Family and Life Advocates v. Becerra,* 138 S.Ct. 2361, 2371 (2018); *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382-83 (1992). *303 Creative LLC v. Elenis* (D. Colo. 2019). In this case, Garcia and Lee are void of any compelling interest to hear Plaintiff say which she was going to when Garcia and Lee knew which courtroom Plaintiff was going to. Even when being excluded from due process, Plaintiff did not interrupt proceedings, damage property, or make any threats. (Exhibit 1).

109.    The No Trespass Directive issued is unconstitutional as it perpetually precludes Plaintiff from being on any APS property thinly supported by two alleged points of substantiation: "since May 2018," Id. And "on July 12, 2018." *Id.*

35

110.    The denial of access to due process on October 7, 2021, was issued arbitrarily without an appropriate level of process or procedural safeguards, making the Rule further unconstitutional, violating Procedural Due Process as Plaintiff was not given an opportunity to be heard and a decision was not made by a neutral decisionmaker prior to Judge Crews adopting Garcia's defamatory statements.

111.    By and through the foregoing, Plaintiff prays this Court will Condemn Rule 83.2 and restore Plaintiff's reputation striking ECFs 137 and 138 in Exhibit 2.

## COUNT 6

**The Standing Order by Judge Crews Deprives Plaintiff of Substantive Due Process Allowing the Court to Declare Plaintiff Free from the Directive**

**Garcia and Lee**

112.    Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

113.    As indicated in Exhibit 2, Rule 83.2's use violates Substantive Due Process as U.S. Marshals, including but not limited to Garcia and Lee, can be void of any secure purpose in questions posed to the public as a barrier to courtroom access at any time, for the people they deem necessary.

114.    Without this Court's intervention, Plaintiff will continue to be deprived under unnecessary alleged courtesy questions posed by U.S. Marshals in District of Colorado courts.

115.    Plaintiff has sought motions for reconsideration and complaints have not resulted in Plaintiff's rights being restored, thus making declaratory judgment the only relief available to Plaintiff.

## COUNT 7

36

## Defamation

### Garcia and USMS

116.    Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

117.    Based on the actions Garcia and Lee to attempt to force Plaintiff to answer an alleged courtesy question to gain access to the courtroom, is considered an act which trespasses upon the fiduciary duty as officers of the Court Garcia and Lee owe the public, therefore Garcia and Lee are considered employees of the governmental entity USMS and are also a Public Person.

118.    USMS by and through Garcia caused libel statements to be published concerning Plaintiff's conduct had warranted being denied rights afforded to her under the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution on October 27, 2021.

119.    USMS by and through Garcia libel statements concerning Plaintiff's conduct to be published on public court record by Judge Crews' court, publishing plaintiff was "belligerent" (Exhibit 2 pp.1-2), which it was known to Garcia the Court would likely publish those statements if not for only the transcript, but it could also be published in court orders; both of which the public holds in high regard and accepts as facts with little scrutiny, therefore a reasonable would accept this speech as true.

120.    USMS by and through Garcia slandered Plaintiff's conduct as being belligerent, with the knowledge the defamatory statements were void of factual evidence, had knowledge the statement was wholly untrue, and/or would not have been construe as belligerent by a reasonable person or reasonable marshal, as the alleged belligerent was not enough for Garcia nor Lee to ask Plaintiff to leave the premises prior to making the

37

statement, prior to the Plaintiff asking Lee why he would attempt to force Plaintiff to answer a courtesy question to which he already had the answer; which Garcia refused to answer. All of which supports the eternal denial of public accommodation to Plaintiff at District of Colorado courts through unnecessary courtesy questions by court staff through advisements of belligerent conduct which is really an expression of rights as not only unconstitutional, but that the statements were false, and were done in retaliation for Plaintiff's participation in protected activities.

121.    USMS by and through Garcia made the statements with a reckless disregard to the legitimacy of the statements, as the conduct did not result in a requirement of plaintiff to leave the courthouse, therefore establishing Garcia knew the statements were probably false and/or had serious doubts to their truth; and that as an officer of the court his statements would likely be accepted as true, by both Judge Crews and the public at large.

122.    The of Plaintiff being denied access to the courtroom based on Garcia's known false statements to the court have created public interest in the issue, supporting more members of the public have read about plaintiff's alleged belligerent conduct.

123.    USMS and Garcia are readers, listeners, viewers, and/or recipients of the publication of court orders and each understood the statement to be defamatory.

124.    Said statements caused the Plaintiff, *inter alia*, financial losses, physical harm, severe emotional distress, and special damages as Plaintiff's monetary losses will continue in perpetuity and are a result of injuries to Plaintiff's reputation and feelings.

## COUNT 8

### Breach of Fiduciary Duty

38

**Garcia, Lee, and USMS**

125.    Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

126.    Rule 83.2 invests a legal authority of the above persons to act for the benefit of the courts and the public by ensuring persons without business or seeking to do harm do not succeed.

127.    Defendants Garcia and Lee were acting as a fiduciary of the Plaintiff with respect to serve and protecting her property, person, rights, while all Defendants held a duty to protect Plaintiff's Constitutional Rights as described herein.

128.    USMS failed Plaintiff by failing to properly train its CSOs to protect the public's constitutional gurantees.

129.    By and through the conduct as alleged in or in relation to the conduct described in every paragraph and Count in this Complaint, Plaintiff has established Defendants have breached their duties as described to the Plaintiff.

130.    Defendants did so recklessly and/or willfully.

131.    Defendants' conduct caused and continues to cause the Plaintiff to suffer damages, injuries, and losses as herein.

## COUNT 9

### Outrageous Conduct

### Garcia and Lee

132.    Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

39

133.     By and through the conduct as alleged in or in relation to the conduct described in every paragraph and Count in this Complaint, Plaintiff has established Defendants Garcia and Lee engaged in conduct that was outrageous, as the conduct is so outrageous in character that a reasonable member of the community would regard the conduct as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community.

134.     Defendants Garcia and Lee did so recklessly and/or with the intent of causing Plaintiff severe emotional distress.

135.     Garcia and Lee's conduct caused and continues to cause the Plaintiff to suffer severe emotional distress.

136.     The extreme and outrageous character of Defendants' conduct arises from fact all Defendants have unlawfully ignored their duties to the Plaintiff as persons in positions of trust and ability to take control of Plaintiff's person while having knowledge that Plaintiff as a Black woman is peculiarly susceptible to emotional distress because of physical or mental condition or peculiarity.

137.     The public importance and impact is clear as a state paper wrote an article on the matter. Exhibit 3. See also ¶25 *supra*.

138.     As a result of the unlawful conduct Plaintiff has suffered *inter alia*, loss of income, emotional distress, loss of housing, physical injuries, mental anguish including humiliation and fear.

## **Jury Demand**

Plaintiff requests a jury trial on all claims so triable.

40

# E. REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays for justice to correct previous and future deprivation of Plaintiff's rights through judgment in her favor, against Defendants, and grant:

A.  Injunctive Relief:

   a.  Correction and order the restoration of Plaintiff's reputation through the suppression of the defamatory statements made in Judge Crews' court by Garcia;

   b.  U.S. Marshals and court staff be prohibited from requiring any member of the public, including Plaintiff, from being forced to answer alleged courtesy to access the courtroom;

   c.  Rule 83.2 is amended to safeguard the constitutional rights of the people U.S. Marshals and court staff determine warrant ad hoc investigations pursuant to Rule 83.2;

   d.  Order Garcia to show cause as to why and how he Plaintiff's conduct prohibited her equal participation in civic engagement;

B.  Declare Rule 83.2, impermissibly vague requiring the District of Colorado to amend the Rule with Plaintiff to ensure the ordinance properly informs the public and court staff, requiring a due process process in the Rule for members of the public;

C.  Damages of $15,000,000 for *inter alia*, unlawful detainment, loss of time, loss of energy, libel and slander, extreme emotional distress caused and/or contributed to Plaintiff's depression, anxiety, fear, all of which results in Plaintiff repeatedly being kept from earning salary, wage and independent contractor income, enjoying life, being free.

41

Defendants' conduct caused and contributed to damaged relationships and reputational harm.

D.  Punitive damages on all claims allowed by law and in an amount to be determined at trial;

E.  Expenses and costs associated with this action on all claims allowed by law;

F.  Pre-and post judgment interest at the lawful rate;

G.  Any further relief this Court deems just and proper, and any other relief as allowed by law.

## VERIFICATION

I, Tiffany Grays declare as follows:

1.      I have personal knowledge of myself and my activities, including those set out in the foregoing Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

2.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself and my activities are true and correct.

DATED: October 30, 2023

_____

Tiffany Grays
PO Box 472322
Aurora, CO  80047
(720) 623-1883
Legalgrays@gmail.com

Exhibit 3

https://www.coloradopolitics.com/courts/judge-agrees-security-guards-could-block-woman-from-entering-courthouse-for-failing-to-answer-question/article_8567b01e-c586-11ec-be08-8b9e19ffd9cc.html

# Judge agrees security guards could block woman from entering courthouse for failing to answer question

By MICHAEL KARLIK michael.karlik@coloradopolitics.com
Apr 26, 2022



Getty images

Security guards acted within their authority by requiring a woman to disclose which courtroom she was going to as a condition of entering the federal courthouse in Denver, a judge has ruled.

Tiffany Grays missed a court hearing in her civil case last fall because two court security officers, identified as CSOs Lee and Garcia, would not let her through without answering a "courtesy" question about her destination in the courthouse. Garcia then told the magistrate judge overseeing the hearing that Grays was belligerent, prompting a rescheduling of the proceeding.

Exhibit 3

Grays, who is representing herself, alleged that the denial of access infringed upon her rights to free speech and due process. However, U.S. District Court Judge William J. Martínez flatly rejected those claims in an order last week.

"There is simply no precedent to support Plaintiff's position that the First Amendment prohibits a government officer from requiring a person entering a government building to answer basic questions about her business there," Martínez wrote on April 21.

Darold Killmer, a civil rights attorney with Killmer, Lane & Newman, believed the judge decided correctly, noting that security measures placed on government buildings do not rise to the level of a constitutional violation.

"The First Amendment allows for reasonable time, place and manner restrictions on a person's right to express themself or to access public facilities," he said. "In this day and age, we have all been subjected to minimally intrusive inconveniences, such as walking through metal detectors, providing identification or other information prior to accessing facilities, and the like. I do not believe Ms. Grays' constitutional rights were violated."

Grays initiated her federal lawsuit against student loan servicer Navient in early 2020, alleging that the company incorrectly reported her payments and damaged her credit, affecting her ability to obtain auto loans or credit cards.

On Oct. 27, 2021, Grays arrived at the Byron G. Rogers U.S. Courthouse in downtown Denver for a hearing in the case. According to Grays, as she was proceeding through security, Lee asked her "What/why are you here?"

"I'm here for court," Grays replied. When Lee reportedly asked which courtroom Grays was going to, she replied that she did not have to tell him.

In a video that Grays began recording, she asked Lee which policy or rule required her to disclose her destination. She told Lee to "get your supervisor."

"The only thing I'm asking you —" Lee began to say.

"I don't have to tell you that. I'm in the right courthouse," Grays retorted.

Exhibit 3

As Grays was waiting for a supervisor, she repeatedly asked another person in the lobby why they were not wearing a face mask properly. When Garcia arrived, he acknowledged to Grays that there was no rule requiring her to disclose her courtroom, but "we do it out of courtesy."

"Uh-oh, so you're making up your own rules and you're preventing me from going to court," Grays interrupted. "That is a violation of my constitutional rights to go to court."

Garcia offered to explain why security officers ask for visitors' destinations, but Grays said she did not want to hear it. She maintained there was no authority to ask that question.

"Let's not play games here," she said. She asked for Garcia's last name, then his first name. He responded, apparently in jest, that there was "no rule or law that says I gotta tell you." Grays laughed at the response.

Shortly after the encounter, Grays emailed U.S. Magistrate Judge S. Kato Crews, who was conducting the hearing in her case, saying she was "being denied access" and asked to have the hearing over the phone. During a brief, three-minute proceeding in his courtroom, Crews announced that Grays was not present because Garcia had informed him that she "became belligerent."

Crews issued an order that same day explaining that the security guards often ask visitors where they are going because the presence of multiple federal buildings adjacent to the Rogers courthouse can confuse people.

"This is a federal courthouse, not a department store," Crews wrote. "Ms. Grays is warned that she is required by the Local Rules of Practice, and is ordered by this Court, to comply with all customary requests, inquiries, and procedures of the CSOs anytime she is required to access the courthouse for settings where she is required to appear in person."

Grays filed several requests to the court, asking for all future hearings to be by phone to limit her "exposure to PTSD" and to be excused from answering future "courtesy questions." She also submitted a letter pursuant to the Freedom of Information Act asking for video and audio from the courthouse lobby on the day of the encounter.

Martínez, the district court judge assigned to her case, dispensed with all of her concerns, writing that there was no impending hearing requiring her to appear in person and that the court was exempt from FOIA requests. The judge also quoted from Local Rule 83.2(b), which requires anyone seeking to enter a court building to "provide identification or information" upon request of a court security officer.

Exhibit 3

"The Court agrees with Judge Crews that the CSO's question about what courtroom she was planning to attend falls within the scope of the questions that anyone seeking entry to any court building must answer if asked," Martínez concluded. "Therefore, Judge Crews acted properly by ordering Plaintiff to comply with such requests in the future."

Grays disputed that she was belligerent and told Colorado Politics she intended to pursue the alleged infringement on her rights to the appellate courts.

"I don't have to answer courtesy questions to get to court," she said.

The clerk of the U.S. District Court said that neither he nor the U.S. Marshals Service tracked how many people had been prevented from entering Colorado's district courthouses in the past year.
MORE INFORMATION



**10th Circuit rebuffs appeal of attempted Pueblo synagogue bomber**

State Supreme Court rules officers had more than 'hunch' to detain suspected drug distributor

Federal judge rejects Arvada's request to dismiss age discrimination lawsuit

Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge S. Kato Crews**

| | |
|---|---|
| Civil Action: 20-cv-00452-WJM-SKC | Date: October 27, 2021 |
| Courtroom Deputy: Amanda Montoya | FTR – Reporter Deck-Courtroom C-201* |

*Parties:*                                           *Counsel:*

TIFFANY GRAYS,                                  Not present

    Plaintiff,

v.

NAVIENT SOLUTIONS, LLC,                  Dennis Lueck, Jr.

    Defendant.

---

**COURTROOM MINUTES**

---

**HEARING: DISCOVERY HEARING**
**Court in session: 11:16 a.m.**
Court calls case.  Appearances of counsel.

The Court notes that Ms. Grays is not present.  The Court was advised by the Lead Court
Security Officer, that Ms. Grays refused to tell them where she was going in the courthouse and
then became belligerent.  This behavior caused the Court Security Officers to deny her access to
the courthouse.

The Court will issue a separate order that addresses Ms. Grays' conduct and resets today's
hearing.

Hearing Concluded.

**Court in recess: 11:19 a.m.**
Total time in court: 00:03

*To order transcripts of hearings, please contact either Patterson Transcription Company at (303)
755-4536 or AB Litigation Services at (303) 629-8534.

.

Exhibit 2

 **Gmail**

**Legal Grays <legalgrays@gmail.com>**

## Activity in Case 1:20-cv-00452-WJM-SKC Grays v. Navient Solutions, LLC et al

**COD_ENotice@cod.uscourts.gov** <COD_ENotice@cod.uscourts.gov>                    Wed, Oct 27, 2021 at 12:39 PM
To: COD_ENotice@cod.uscourts.gov

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court - District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 10/27/2021 at 12:39 PM MDT and filed on 10/27/2021
**Case Name:**          Grays v. Navient Solutions, LLC et al
**Case Number:**        1:20-cv-00452-WJM-SKC
**Filer:**
**Document Number:** 138

**Docket Text:**
**MINUTE ORDER: The Court tried to hold an in-person discovery hearing today but was unable to do so because Plaintiff Tiffany Grays was denied access to the courthouse by the Lead Court Security Officer (CSO). The Court was informed by the Lead CSO, who arrived at my Chambers, that when Ms. Grays began to proceed through security, a CSO asked her where she was going. The Court is informed that CSOs often ask this question of those seeking entry into the courthouse in part because entrants sometimes confuse this courthouse with the Alfred A. Arraj Courthouse across the street, or with the adjacent Federal Building. According to the CSO, Ms. Grays refused to answer the question and became "belligerent." The Lead CSO attempted to intervene but, according to the Lead CSO, Ms. Grays remained "belligerent," raised her voice, and refused to tell the CSOs where she was going. She was thus denied access. At 12:16 PM, this Court received an email from Ms. Grays generally confirming the events as described.**

**Local Rule 83.2(a) provides: "All persons entering a building where court is being held shall be subject to security procedures.... Violation of this rule shall be grounds for refusing admission to the building where court is being held and may subject the offender to detention, arrest, and prosecution as provided by law or to a contempt proceeding." Subsection 83.2(b) further provides: "On request of a... court security officer... anyone within or seeking entry to any court building shall produce identification and state the nature of his or her business. Failure to provide identification or information shall be grounds for removal or exclusion from the building." Ms. Grays, as a litigant in this Court, is required to follow these Local Rules of Practice.**

**For the many civil lawsuits Ms. Grays has filed in this judicial district, it is odd she is now choosing to question the security procedures for physically accessing the court. This is a federal courthouse, not a department store. Ms. Grays is warned that she is required by the Local Rules of Practice, and is ordered by this Court, to comply with all customary**

Exhibit 2

requests, inquiries, and procedures of the CSOs anytime she is required to access the courthouse for settings where she is required to appear in person. Any future refusal by Ms. Grays to so comply that results in her denial of access will result in this Court recommending dismissal of this case for failure to prosecute, or may result in contempt or other appropriate sanctions.

The Discovery Hearing is re-set to occur in person on 11/3/2021 at 10:00 AM in Courtroom C201 before Magistrate Judge S. Kato Crews. All pro se parties and counsel are required to appear in person, and are ordered to comply with the security procedures of the CSOs when entering.

SO ORDERED by Magistrate Judge S. Kato Crews on 10/27/2021. Text Only Entry (skclc1)

**1:20-cv-00452-WJM-SKC Notice has been electronically mailed to:**

Robyn Berger Averbach    robyn@rq-law.com, stephanie@rq-law.com

Jason Andrew Spak    jason.spak@fisherbroyles.com

Jeremy A. Moseley    jmoseley@spencerfane.com, kkern@spencerfane.com

Dennis Norman Lueck, Jr    dlueck@spencerfane.com, mmesser@spencerfane.com

Nicholas Alexander Lutz (Terminated)    nl@rmlawyers.com, dn@rmlawyers.com, hr@rmlawyers.com, tk@rmlawyers.com

James Paul Acosta    jacosta@qslwm.com, ctrotter@qslwm.com, kmclemore@qslwm.com

Jordan S. O'Donnell (Terminated)    jodonnell@hinshawlaw.com, eparry@hinshawlaw.com

Sean Dong Yi    syi@jonesday.com, lgirdlestone@jonesday.com

Tiffany Grays    legalgrays@gmail.com

**1:20-cv-00452-WJM-SKC Notice has been mailed by the filer to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1071006659 [Date=10/27/2021] [FileNumber=8351009-0] [65394a933fad8ed4efe83527fad199927fd5453588a2ac1898049a558ea71c8f8b 4a2cf6fbc85debfe8c92ea7bf503acfdced0649b1e6a90b7b6da1400ebdab0]]